UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DELPHINE TAYLOR, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 17-123 (RBW) |
| JEREMY GUIDA, | ) ) ) | |
| Defendant. | ) ) | |

# MEMORANDUM OPINION

The plaintiff, Delphine Taylor, brings this civil action against Jeremy Guida, Washington Metropolitan Area Transit Authority ("WMATA") police officer, asserting common law claims of negligence (Count One) and assault and battery (Count Two), see Complaint ("Compl.") ¶¶ 8–14, as well as an excessive force claim pursuant to 42 U.S.C. § 1983 (2012) (Count Three), see id. ¶¶ 15–18.[1] Currently pending before the Court is the Motion for Summary Judgment by Jeremy Guida ("Def.'s Mot."). Upon careful consideration of the parties' submissions,[2] the

---

[1] Although the plaintiff claims that the defendant assaulted her, see Compl. ¶ 12 ("[T]he [defendant], by refusing to loosen the handcuffs, assaulted and battered [the] [p]laintiff."), as the defendant correctly notes, the plaintiff's "allegations sound in battery only," Memorandum in Support of Motion for Summary J[ud]gment by Jeremy Guida ("Def.'s Mem.") at 20. The defendant's position is correct because the plaintiff does not assert that the defendant intentionally threatened her or attempted to cause her harm, see Spicer v. District of Columbia, 916 F. Supp. 2d 1, 4 (D.D.C. 2013) (quoting Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993)) (defining an assault as "an intentional . . . attempt or threat . . . to do physical harm to [a] victim"), but does claim that the defendant caused her harm, see Compl. ¶ 14 ("As a . . . result of the . . . [defendant's] actions, [the] [p]laintiff suffered grave bodily injury."). Accordingly, the Court finds that the defendant is entitled to summary judgment on the plaintiff's assault claim.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) Officer Guida's Statement of Material Facts Not in Dispute ("Def.'s Facts"); (2) the Plaintiff's Opposition to Motion for Summary Judgment by Jeremy Guida ("Pl.'s Opp'n"); (3) the Memorandum in Support of Motion for Opposition to Defendant's Motion for Summary J[ud]gment ("Pl.'s Mem.") (4) Officer Guida's Statement of Material Facts Contr[o]verted by Plaintiff ("Pl.'s Disputed Facts"); (5) the Plaintiff's Statement of Material Facts ("Pl.'s Facts"); and (6) Jeremy Guida's Reply to Plaintiff's Opposition to Motion for Summary [Judgment] ("Def.'s Reply").

Court concludes for the following reasons that it must grant in part and deny in part the defendant's motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed by the parties, unless otherwise indicated. On January 27, 2016, the plaintiff "exited through the fare gates at [the] Gallery Place [/Chinatown] metro [s]tation" without paying the required fare. Def.'s Facts ¶¶ 1–2, 39; see Pl.'s Facts ¶ 4; Pl.'s Opp'n, Exhibit ("Ex.") 1 (Deposition of Jeremy Guida ("Guida Dep.")) 9:13–19, 14:1–7, 16:10–17:6; Def.'s Mot., Ex. 1 (Deposition of Delphine Taylor ("Taylor Dep.")) 78:14–15. Upon seeing the plaintiff exit without paying, the defendant stopped the plaintiff and "arrested her for fare evasion." Pl.'s Facts ¶ 6; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 24:15–19; Def.'s Facts ¶¶ 4, 6, 41–44; Def.'s Mot., Ex. 1 (Taylor Dep.) 78:15–22. After the defendant handcuffed the plaintiff, he represents that he "visually and physically inspect[ed] the handcuffs" to "check[] for adequate room and slackness" by both "looking to see if there [were] gaps on each side and . . . mak[ing] sure that the handcuffs c[ould] move along the wrist . . . back and forth from side to side or . . . up and down." Def.'s Facts ¶¶ 47–49; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 26:18–28:20. The plaintiff disputes the defendant's account, see Pl.'s Disputed Facts ¶ 2 (denying that the defendant "ever moved the handcuffs along her wrists"), and asserts that immediately after the defendant placed her in handcuffs, "she complained that they were too tight," but the defendant "refused to loosen them." Pl.'s Facts ¶ 11; see Def.'s Mot., Ex. 1 (Taylor Dep.) 79:1–2, 94:13–17, 103:11–12, 115:5–13.

Thereafter, while waiting to be transported to the First District Station of the Metropolitan Police Department for processing, the plaintiff "complained [to another police officer] of overtight handcuffs." Pl.'s Facts ¶ 13; see Def.'s Facts ¶ 52; Def.'s Mot., Ex. 1

(Taylor Dep.) 118:3–16.  According to the defendant, he then "approached [the] [p]laintiff . . . and checked the handcuffs . . . by both visual inspection and physical inspection of moving the handcuffs along [the] [p]laintiff's wrists."  Def.'s Facts ¶ 53; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 33:16–36:9.  However, according to the plaintiff, "[n]o one attempted to move the handcuffs up and down her wrist or from side to side after they were placed on her."  Pl.'s Facts ¶ 14; see Def.'s Mot., Ex. 1 (Taylor Dep.) 118:7–9.  The plaintiff was then transported to the First District Station, see Def.'s Mot., Ex. 1 (Taylor Dep.) 120:7–16; see also Pl.'s Opp'n, Ex. 1 (Guida Dep.) 41:3–11, where the handcuffs were removed, see Def.'s Mot., Ex. 1 (Taylor Dep.) 120:17–121:7; Pl.'s Opp'n, Ex. 1 (Guida Dep.) 47:12–21.

On December 27, 2016, the plaintiff filed her Complaint in the Superior Court of the District of Columbia against the defendant, another WMATA police officer, and WMATA.  See Compl. at 1.  On January 18, 2017, WMATA removed the case to this Court pursuant to 28 U.S.C. §§ 1441(a), (c), 1446 (2012).  See Notice of Removal at 1.  Thereafter, the Court dismissed WMATA as a defendant after concluding that "sovereign immunity bars the plaintiff's . . . claims against [it]," Order at 8 (Aug. 16, 2017), ECF No. 14, and dismissed the Complaint as to the other WMATA police officer "given the plaintiff's oral stipulation of dismissal of all claims against [the other WMATA police officer]," Order at 1 (June 22, 2018), ECF No. 24.  The defendant then filed his motion for summary judgment, which is the subject of this Memorandum Opinion.

## II.     STANDARD OF REVIEW

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the

3

governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in h[er] favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 248. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position . . . [is] insufficient" to withstand a motion for summary judgment; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## III. LEGAL ANALYSIS

The defendant argues that "all three [remaining] counts [of the plaintiff's Complaint] must be dismissed as a matter of law." Def.'s Mot. at 2.[3] Specifically, he contends that the Court must grant summary judgment in his favor on (1) the plaintiff's excessive force claim because the defendant "enjoys qualified immunity for his actions," id. at 3; (2) the plaintiff's battery claim because the plaintiff "has failed to produce admissible [evidence] that [the defendant's] actions were not objectively reasonable," id. at 2; and (3) the plaintiff's negligence claim because the plaintiff has "pled an intentional tort[] masquerading as a negligence claim," id., and "has failed to produce admissible evidence regarding the national standard of care for the methodology by which officers must check for handcuff tightness of arrestees," id. at 9. The Court will address each of the defendant's arguments in turn.

### A. Liability Under 42 U.S.C. § 1983 (Count Three)

Where, as in this case, a plaintiff brings a claim under 42 U.S.C. § 1983, the defendant may raise the affirmative defense of qualified immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The doctrine of qualified immunity shields police officers, including WMATA police officers,[4] "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow, 457 U.S. at 818). Once a defendant asserts the defense of qualified immunity, the burden then falls to the plaintiff to show

---

[3] Because the pages of the defendant's summary judgment briefing are not numbered, the page numbers cited by the Court when referencing the defendant's summary judgment briefing are the automatically-generated page numbers assigned by the Court's electronic case filing system.

[4] See Griggs v. Wash. Metro. Area Transit Auth., 232 F.3d 917, 921 (D.C. Cir. 2000) ("[I]n the District of Columbia, a Metro Transit Police officer engaged in . . . an arrest has the same powers and limitations as a member of the District of Columbia Metropolitan Police Department, and consequently has [ ] qualified immunity for his torts.").

5

that the police officer is not entitled to the protection afforded by qualified immunity. See Winder v. Erste, 905 F. Supp. 2d 19, 28 (D.D.C. 2012). A defendant is not entitled to qualified immunity if the plaintiff establishes that (1) the defendant's conduct violated a constitutional right, and (2) the right was "clearly established" at the time of the defendant's conduct. Pearson, 555 U.S. at 231.

"[W]hether a . . . defendant's conduct violates the 'clearly established' constitutional rights of the plaintiff is a pure question of law that must be resolved by the [C]ourt." Pitt v. District of Columbia, 491 F.3d 494, 509 (D.C. Cir. 2007).

> To decide the issue of whether or not the non-movant may survive summary judgment [on a Section 1983 claim]—i.e., whether [s]he has provided enough evidence that a reasonable jury could return a verdict in h[er] favor—the [C]ourt must first identify the version of events that best comports with the summary judgment standard and then ask[] whether, given that set of facts, a reasonable officer should have known that his actions were unlawful.

Kyle v. Bedlion, 177 F. Supp. 3d 380, 389 (D.D.C. 2016) (third alteration in original) (citation and internal quotation marks omitted).

> [A] defendant's motion for summary judgment is to be denied only when, viewing the facts in the record and all reasonable inferences derived therefrom in the light most favorable to the plaintiff, a reasonable jury could conclude that the excessiveness of the force is so apparent that no reasonable officer could have believed in the lawfulness of his actions.

Wardlaw v. Pickett, 1 F.3d 1297, 1303 (D.C. Cir. 1993) (citing Martin v. Malhoyt, 830 F.2d 237, 253–54 (D.C. Cir. 1987)). However, "[q]ualified immunity cannot be granted on summary judgment . . . if there is a genuine issue as to a material issue of fact." Arrington v. United States, 473 F.3d 329, 339 (D.C. Cir. 2006).

Here, the plaintiff alleges that "by over tightening her handcuffs and refusing to loosen them, . . . [the defendant] used excessive force [that] was entirely unjustified" in violation of the

6

Fourth Amendment.⁵ Compl. ¶ 16. The Fourth Amendment of the Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has recognized that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," Graham v. Connor, 490 U.S. 386, 395 (1989) (citing Terry v. Ohio, 392 U.S. 1, 22–27 (1968)), and "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," id. at 396 (citation and internal quotation marks omitted). However, the "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier v. Katz, 533 U.S. 194, 202 (2001). "Determining whether the force used to effect a particular seizure is reasonable . . . requires a careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (internal quotation marks omitted). "This balancing test is both objective and fact-sensitive," Martin, 830 F.2d at 261, and a court must judge the "reasonableness of a particular use of force . . . from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," considering "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the

---

⁵ The plaintiff also alleges that the defendant's actions of "over tightening her handcuffs and refusing to loosen them" deprived her of "the clearly established right to be free from the use of excessive and unreasonable force during the course of her arrest and pretrial detention, as guaranteed by the . . . Fifth Amendment[]." Compl. ¶ 16 (emphasis added). However, as the defendant correctly notes, "excessive force claims [are] analyzed under the Fourth Amendment." Def.'s Mem. at 27; see Graham, 490 U.S. at 395 (holding that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach."); Hunter v. District of Columbia, 943 F.2d 69, 76–77 (D.C. Cir. 1991), abrogated on other grounds by, Atchinson v. District of Columbia, 73 F.3d 418 (D.C. Cir. 1996); Hall v. District of Columbia, 308 F. Supp. 3d 269, 272 (D.D.C. 2018). In fact, the plaintiff, in her opposition, maintains only her "constitutional claims of her Fourth Amendment rights under 42 U[.]S[.]C[.] § 1983," Pl.'s Opp'n at 15 (capitalization removed), and does not argue that she is pursuing a Section 1983 claim pursuant to the Fifth Amendment, see id. at 15–19. Therefore, the Court must grant summary judgment in the defendant's favor on the plaintiff's excessive force claim pursuant to the Fifth Amendment.

7

suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396 (internal quotation marks omitted). "When an officer carries out a seizure that is reasonable, taking into account all relevant circumstances, there is no valid excessive force claim." Cty. of L.A. v. Mendez, — U.S. —, 137 S.Ct. 1539, 1547 (2017).

The defendant argues that his "actions in checking for the tightness of [the] [p]laintiff's handcuffs are objectively reasonable, and therefore there was no Fourth Amendment violation of [the] [p]laintiff's rights as a matter of law." Def.'s Mem. at 23. As noted earlier, the defendant claims that after handcuffing the plaintiff, he "check[ed] for adequate room and slackness by both visually and physically inspecting the handcuffs," Def.'s Facts ¶ 47; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 27:7–28:6, which entailed "looking to see if there [we]re gaps on each side and . . . mak[ing] sure that the handcuffs c[ould] move along the wrist" "back and forth from side to side or . . . up and down," Def.'s Facts ¶¶ 48–49; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 28:1–12. The defendant further claims that the plaintiff "never told him that the handcuffs were too tight," Def.'s Facts ¶ 52; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 32:9–33:2, and that after the plaintiff told another officer who was present on the scene that "her handcuffs were too tight" while she was waiting for the police transport vehicle, Def.'s Facts ¶ 52; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 32:16–34:6, the defendant "checked the handcuffs . . . by both visual inspection and physical inspection of moving the handcuffs along [the] [p]laintiff's wrists" and "determin[ed] that they were not too tight," Def.'s Facts ¶ 53; see Pl.'s Opp'n, Ex. 1 (Guida Dep.) 34:7–36:9. However, the plaintiff denies that the defendant "physically moved the handcuffs on [her] wrists" when he handcuffed her, Pl.'s Disputed Facts ¶ 1, and maintains that "she complained [to the defendant]

that the handcuffs were too tight within a second or two of them being placed on her," id. ¶ 5, but that "no one checked the handcuffs to see if they were on too tight," id. ¶ 6.

As a result of these competing versions of the encounter between the plaintiff and the defendant, the "Court is presented with a classic 'he said, she said' . . . situation in which summary judgment is inappropriate because the facts are in diametric opposition." Barnhardt v. District of Columbia, 723 F. Supp. 2d 197, 215 (D.D.C. 2010). Therefore, the resolution of this issue "depends on credibility determinations" that must be resolved by a jury. Id. at 216. And, while it is possible that a reasonable jury will determine that the defendant properly checked the tightness of the handcuffs he had placed on the plaintiff and determined that they were not overly tight, it is also possible that a reasonable jury will credit the plaintiff's testimony and conclude that the defendant refused to loosen the handcuffs despite the plaintiff's persistent complaints. Thus, these factual disputes raised by the plaintiff are fatal to the defendant's motion for summary judgment because these conflicting facts, viewed in a light most favorable to the plaintiff, "would allow a [reasonable] juror to conclude that no reasonable officer could have believed in the necessity of maintaining the tightness of [the plaintiff's] handcuffs." Dormu v. District of Columbia, 795 F. Supp. 2d 7, 23 (D.D.C. 2011).[6] Accordingly, at this stage in the

---

[6] These factual disputes are also fatal to the defendant's argument regarding the second prong of the qualified immunity inquiry, as to which he claims that

> there is no "clearly established" law[] that would put . . . [the defendant] on notice that by checking . . . [the plaintiff's] handcuffs for tightness by both a visual inspection and by physically checking for ease of movement of the handcuffs along . . . [the plaintiff's] wrists, that [the defendant] would be violating . . . [the plaintiff's] constitutional right to be free from excessive force.

Def.'s Mem. at 26. Although the defendant maintains that he checked the tightness of the plaintiff's handcuffs, the plaintiff disputes this allegation and a reasonable jury could conclude, if it credits the plaintiff's version of the events forming the basis of this lawsuit, that the defendant never checked the plaintiff's handcuffs for tightness. And, before the Court can determine whether the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful, Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)), a jury must determine whether to credit the defendant's or the plaintiff's

(continued . . .)

proceedings, the Court cannot determine as a matter of law that the defendant's conduct was objectively reasonable and therefore must deny the defendant's motion for summary judgment on the plaintiff's Section 1983 excessive force claim.[7]

## B. The Plaintiff's Common Law Claims (Counts One and Two)

### 1. Battery

The plaintiff alleges that the defendant, "by refusing to loosen the handcuffs, . . . battered [her]." Compl. ¶ 12. The defendant argues in response that he "could not be said to be acting unreasonably, as a matter of law, when visually inspecting the handcuffs and physically moving [ ] them to check for sufficient laxity," Def.'s Mem. at 21, and that the plaintiff's battery claim "must be dismissed for failure to provide admissible expert testimony," id. The defendant is correct that under District of Columbia law,[8] "[a] police officer has a qualified privilege to use reasonable force to effect an arrest," so long as the "means employed are not in excess of those which . . . [he] reasonably believes . . . [are] necessary." Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993) (internal quotation marks omitted). However, because "[t]his standard is similar to the excessive force standard applied in the Section 1983 context," Rogala v. District of Columbia, 161 F.3d 44, 57 (D.C. Cir. 1998) (citing Etheredge, 635 A.2d at 915

---

(. . . continued)
version of events. Therefore, the Court cannot, at this stage, determine whether the defendant has satisfied the second prong of the qualified immunity test.

[7] The defendant also argues that the testimony of the expert proffered by the plaintiff is "inadmissible as a matter of law as it is wholly unreliable and fails to articulate an admissible national standard of care for a methodology by which officers must check the tightness of handcuffs." Def.'s Mem. at 23 (incorporating the arguments made in support of summary judgment on the plaintiff's negligence claim). However, before the Court can determine whether the defendant's actions were in accordance with the standard applicable to handcuffing techniques and whether "no reasonable officer could have believed in the lawfulness of his actions," Wardlaw, 1 F.3d at 1303 (citing Martin, 830 F.2d at 253–54), a jury must resolve the factual dispute regarding whether the defendant checked the plaintiff's handcuffs for tightness. Therefore, this argument advanced by the defendant does not compel the Court to conclude that the expert testimony proffered by the plaintiff is inadmissible.

[8] District of Columbia law applies to the plaintiff's common law claims because the events giving rise to those claims occurred in the District of Columbia. See 28 U.S.C. § 1346(b)(1); Thomas v. Nicholson, 539 F. Supp. 2d 205, 214 n.6 (D.D.C. 2008).

10

n.10), and because genuine issues of material fact exist regarding whether the defendant checked the tightness of the plaintiff's handcuffs, see Part III.A, supra, the Court must also deny the defendant's motion for summary judgment with respect to the plaintiff's battery claim for the same reasons that the Court concluded that summary judgment was inappropriate on the plaintiff's excessive force claim under Section 1983, see Part III.A, supra.

### 2. Negligence

In support of her negligence claim, the plaintiff alleges that the defendant, "by over-tightening [her] handcuffs and refusing to loosen them, failed to comply with the national standard of care required of police officers faced with like circumstances and acted in a grossly negligent manner." Compl. ¶ 9. The defendant argues that the plaintiff's negligence claim fails not only because it stems from "the same act upon which she alleges her battery and excessive force claims," Def.'s Reply at 3, but also because the expert testimony proffered by the plaintiff regarding the standard of care with respect to police handcuffing is unreliable, see Def.'s Mem. at 18. The Court disagrees with the defendant.

The District of Columbia Court of Appeals has acknowledged that "[a]n individual who has been injured by a District police officer may sue under one or more common law theories of legal liability such as assault and battery or negligence." District of Columbia v. Chinn, 839 A.2d 701, 705 (D.C. 2003). However, "if, in a case involving the intentional use of force by police officers, a negligence count is to be submitted to a jury, that negligence must be distinctly pled and based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself and violative of a distinct standard of care." Id. at 711.

Here, all three of the Chinn requirements are satisfied. First, the plaintiff has pleaded her negligence claim separately from her battery claim. See Compl. ¶¶ 8–10, 12–14 (setting forth distinct claims for negligence and battery). Second, the plaintiff's negligence claim, contrary to

the defendant's assertion, is "based upon at least one factual scenario that presents an aspect of negligence apart from the use of excessive force itself." Chinn, 839 A.2d at 711. Specifically, the plaintiff contends, in her opposition to the defendant's summary judgment motion,[9] that the defendant's improper placing of the handcuffs on her and his "fail[ure] to test for excessive tightness" at that time "arguably supports a finding of a failure to take reasonable care[—][t]hat is, either not knowing how to test for excessive tightness in compliance with the standard of care or simply not bothering to do the correct test," Pl.'s Mem. at 7, while, on the other hand, failing "to test [the handcuffs] for tightness or loosen them" after she complained of tightness while she waited to be transported to the First District Station of the Metropolitan Police Department for processing" "suggests, if true, a far more reckless or intentional disregard for the safety of [the plaintiff]," id. at 7–8. And, the Court agrees with the plaintiff and finds that the evidence, viewed in a light most favorable to her, can "be interpreted to tell two, fundamentally different stories," and a reasonable jury therefore may conclude that the events surrounding the plaintiff's arrest and subsequent handcuffing "lends themselves to a theory of negligence." Blair v. District of Columbia, 190 A.3d 212, 223 (D.C. 2018).[10]

---

[9] In arguing that the plaintiff's negligence claim is not separate and distinct from her battery claim, the defendant incorrectly focuses solely on the allegations that the plaintiff sets forth in her Complaint. To the contrary, courts that have addressed the second Chinn requirement at the summary judgment stage have not limited their evaluation of a plaintiff's negligence claim to the allegations contained in the complaint. See Ingram v. Shipman-Meyer, 241 F. Supp. 3d 124, 151 (D.D.C. 2017) (considering arguments contained in the plaintiff's opposition to the defendants' motion for summary judgment in determining whether the plaintiff satisfied the Chinn requirements); Dormu v. District of Columbia, 795 F. Supp. 2d 7, 30 (D.D.C. 2011) (same).

[10] The defendant argues that the plaintiff "has not—and cannot—assert a negligent act in advance of the alleged excessive force of handcuffing." Def.'s Reply at 3. However, the plaintiff need not allege a "negligent act that precedes the application of [excessive force]." Blair, 190 A.3d at 223 n.23. Although "civil actions against the police in which [the District of Columbia Court of Appeals] has permitted submission of both negligence and assault and battery claims to the jury" share four common characteristics, one being that they "involve a negligent act that precedes the application of the relevant force of resort to firearms, i.e., prior to the pulling of the trigger," the District of Columbia Court of Appeals has "not said that in every case all four characteristics are required to justify dual instructions for assault and battery (excessive force) and negligence." Id. In fact, in Blair, the District of Columbia Court of Appeals did "not consider any but the third characteristic" that each case "involves alternate

(continued . . .)

12

The third Chinn requirement that there be a violation of a "distinct standard of care" is also satisfied in this case. Chinn, 839 A.2d at 711. The plaintiff's negligence claim is not based on the general excessive force standard, but involves an independent standard of care identified by the plaintiff's expert, Randy Foster—a former Deputy United States Marshal who has "over [twenty-five] years [of experience in law enforcement] on the federal, state[,] and local levels." Pl.'s Opp'n, Ex. 5 (Law Enforcement Expert Witness Report ("Foster Rep.")) at 4. The defendant argues, however, that Foster's "report and testimony . . . is not reliable . . . [because it is] predicated upon his flawed misunderstanding of an authoritative treatise on handcuffing, writ[ten] by . . . Dr. John G. Peters, Jr." Def.'s Mem. at 10.

A district court has "broad discretion in determining whether to admit or exclude expert testimony." United States v. Gatling, 96 F.3d 1511, 1523 (D.C. Cir. 1996). Federal Rule of Evidence 702, which governs the admission of expert testimony, "requires [ ] courts to ensure that expert testimony is 'not only relevant, but reliable.'" Heller v. District of Columbia, 801 F.3d 264, 271 (D.C. Cir. 2015) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)); see Ambrosini v. Labarraque, 101 F.3d 129, 133 (D.C. Cir. 1996) ("The Daubert standard involves a two-prong analysis that centers on evidentiary reliability and relevancy."). A court "ha[s] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); see also Gilmore v. Palestinian Interim Self-Gov't Auth., 843 F.3d 958, 972 (D.C. Cir. 2016) (quoting Kumho Tire, 526 U.S. at 142) (noting that "[t]he test of reliability is

---

(. . . continued)
scenarios in at least one of which a distinct act of negligence, a misperception of fact, may have played a part in the decision to [use excessive force]." Id.

13

'flexible' and 'the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys [with] respect to its ultimate reliability determination'").

With regard to claims of negligence, expert testimony is "required . . . regarding the applicable standard of care, unless the subject matter is 'within the realm of common knowledge and everyday experience'" of the jurors. District of Columbia v. Arnold & Porter, 756 A.2d 427, 433 (D.C. 2000) (quoting District of Columbia v. White, 442 A.2d 159, 164 (D.C. 1982)). When an expert witness is required, the expert must "clearly articulate and reference a standard of care by which the defendant's actions can be measured." Robinson v. Wash. Metro. Area Transit Auth., 774 F.3d 33, 39 (D.C. Cir. 2014) (quoting Varner v. District of Columbia, 891 A.2d 260, 269 (D.C. 2006)). "The standard of care is to be found in 'the practices in fact generally followed by other comparable governmental facilities' or some nationally-recognized standard." Evans-Reid v. District of Columbia, 930 A.2d 930, 936 (D.C. 2007) (quoting Clark v. District of Columbia, 708 A.2d 632, 636 (D.C. 1997)).

In his expert report, Foster states that the correct method of determining whether handcuffs have been properly applied is "to place the tip of his[] index finger between the bracelet and the subject's wrists[, and] [i]f applied correctly, the officer should be able to slip the finger under the handcuffs on the top, bottom[,] and the sides of the prisoner's wrists." Pl.'s Opp'n, Ex. 5 (Foster Rep.) at 7. And, contrary to the defendant's assertion that Foster, as evidence of the standard of care, relies on a book written by Dr. Peters entitled, "Tactical Handcuffing for Chain & Hinged-Style Handcuffs," see Def.'s Mem. at 15, Foster represents that the correct method of applying handcuffs is set forth in a lesson plan from an in-service training program conducted by the Metropolitan Police Department's Institute of Police Science and that this method is in accord not only with Dr. Peters's book, but also "with the method used by the

14

U.S. Marshal's Service and [t]he Federal Air Marshal[] Service and every local and [s]tate [p]olice [f]orce that [he] [is] familiar with," Pl.'s Opp'n, Ex. 5 (Foster Rep.) at 8. Based on Foster's experience as an investigative detective, a United States Air Force Security Forces Officer, a Federal Air Marshal, a Supervisory Deputy United States Marshal, and a juvenile detention officer, as well as his training with a number of state and federal law enforcement agencies, see Pl.'s Opp'n, Ex. 4 (Curriculum Vitae of Randy Foster) at 2, 4–6, the Court finds that Foster's report is sufficient to show that he has "articulate[d] and reference[d] a standard of care [generally followed by other comparable governmental facilities] by which the defendant's actions can be measured." Robinson, 774 F.3d at 39.[11] Accordingly, the Court finds that the plaintiff's negligence claim is distinct from her battery claim and therefore must deny the defendant's motion for summary judgment on the plaintiff's negligence claim.

## IV.     CONCLUSION

For the foregoing reasons, the Court concludes that summary judgment for the defendant is not warranted on the plaintiff's Section 1983 and common law battery and negligence claims. However, the Court concludes that summary judgment for the defendant must be granted on the

---

[11] The Court notes that the defendant's concerns regarding Foster's alleged inability to "articulate the difference in the amount of space a fingertip test would yield compared to the amount of space there would be [ ] if an officer could move the handcuffs freely along the wrists," Def.'s Mem. at 16, go to the weight, not admissibility, of Foster's testimony and can be appropriately addressed through cross-examination. See United States v. H & R Block, Inc., 831 F. Supp. 2d 27, 34 (D.D.C. 2011) (stating that "technical deficiencies that can be adequately explored on cross-examination generally go to the weight, rather than the admissibility, of the evidence, unless the methodological deficiencies are so sweeping or fundamental as to render the survey wholly unreliable and therefore inadmissible"); see also Ambrosini, 101 F.3d at 141 ("By attempting to evaluate the credibility of opposing experts and the persuasiveness of competing scientific studies, the district court conflated the questions of the admissibility of expert testimony and the weight appropriately to be accorded such testimony by a fact finder."); Harris v. Koenig, 815 F. Supp. 2d 6, 10 (D.D.C. 2011) ("Whether or not [expert's testimony] is based on 'unreasonable assumptions' will be determined at trial after full cross-examination."). The Court also notes that Foster need not "point to any studies on data on the difference between the two methods, and what benefits might be associated with one versus the other," as the defendant suggests is required. Def.'s Mem. at 16. Although the Supreme Court in Daubert identified a list of non-exhaustive list of factors that a district court may consider when assessing reliability, see Daubert, 509 U.S. at 593–94, in matters where the Daubert factors do not apply, "the relevant reliability concerns may focus upon personal knowledge or experience," Kumho Tire, 526 U.S. at 150. And, in light of Foster's extensive experience and training, the Court finds that Foster's report regarding standard of care required for applying handcuffs is reliable.

plaintiff's assault claim.   Accordingly, the Court will grant in part and deny in part the defendant's motion for summary judgment.

**SO ORDERED** this 30th day of September, 2019.[12]

REGGIE B. WALTON<br>
United States District Judge

---

[12] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.